## THE WESTFIELD.
## THE GLENELG.

(District Court, S. D. New York. December 26, 1922.)

**Collision ⊝74—Evidence held to show vessel subsequently anchored did not give the other a foul berth.**

On cross-libels for a collision between two anchored vessels, evidence *held* not to show that the last vessel to anchor gave the other a foul berth, so that such vessel was entitled to recover full damages from the other, which lengthened its scope by paying out its chain and dragged anchor.

In Admiralty. Cross-libels by the Rio Cape Line against the steamship Westfield, and by the United States against the steamship Glenelg, to recover damages for a collision. Decree entered dismissing the first libel, and giving the United States interlocutory relief.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (L. de Grove Potter, of New York City, of counsel), for Rio Cape Line.

William Hayward, U. S. Atty., of New York City (Horace M. Gray, of New York City, of counsel), for the United States.

WARD, Circuit Judge. I granted a rehearing in this case because I thought the relative positions of the two vessels deserved further consideration and that the Glenelg must have been anchored higher up the bay than I supposed.

I throw out of the case altogether the testimony of the witnesses from the Westfield because the account they give of the movements of the vessel just before, at, and after the collision as illustrated by their diagrams seems to me contrary to the laws of nature, and in addition to that because the testimony of the first officer, who professed to give a detailed account of these movements (corroborated by the second officer), was false, he not having been aboard the vessel at

the time, as the United States now admits. The only additional testimony offered was that of two cadets examined at the trial some years after the events, and it added nothing of importance to the case.

On the other hand, though the testimony of the witnesses from the Glenelg is unusually frank and intelligible, yet it does not show very accurate observation as to the relative positions of the vessels when the Westfield came to anchor. The second officer, Evans, who was more confident than any other witness from the steamer, says the Westfield was a little abaft the Glenelg's port beam when he came on watch at midnight of November 25th to 4 a. m. of the 26th. In this situation, if the Glenelg's scope had not been lengthened by paying out 30 fathoms and dragging her anchor, the collision could have happened exactly as it did. The distance she dragged is not stated, and probably could not have been stated, in view of her sheering in the wind. If her scope was increased one length, I think the collision could not have happened unless the Glenelg had been anchored one length higher up the bay than Evans says. Though I incline to think that this was so, still in view of the uncertainties as to the actual bearing of the Westfield from the Glenelg and as to the distance the Glenelg dragged, I cannot say that the proofs sufficiently support my original conclusion that the Westfield gave the Glenelg a foul berth. A decree may be entered dismissing the libel of the owners of the Glenelg, and in the second case a decree may be entered giving the owners of the Westfield the usual interlocutory relief, but without costs in either case to the United States, in view of the character of the testimony.